FARHAD NOVIAN (State Bar No. 118129)
farhad@novianlaw.com
LAUREN WOODLAND (State Bar No. 283052)
laurenw@novianlaw.com
ALEXANDER KANDEL (State Bar No. 306176)
alexanderk@novianlaw.com
NOVIAN & NOVIAN, LLP
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222

Attorneys for Plaintiff Crystal W Design LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYSTAL W DESIGN LLC, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LEAPFROG PRODUCT DEVELOPMENT, LLC, an Illinois limited liability company, d/b/a ELLO; TARGET CORPORATION, a Minnesota corporation; REBELSTORK U.S.A., INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. [____________________]<br><br>**COMPLAINT FOR:**<br><br>(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);<br><br>(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT; AND<br><br>(3) VICARIOUS COPYRIGHT INFRINGEMENT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Crystal W Design LLC ("CWD" or "Plaintiff"), by and through its undersigned counsel, hereby alleges against Defendants Leapfrog Product Development, LLC d/b/a Ello ("Leapfrog" or "Ello"), Target Corporation ("Target"), Rebelstork U.S.A., Inc. ("Rebelstork"), and Does 1 through 10, inclusive (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1. This is a civil action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act"). Plaintiff is the design company of professional artist and surface designer Crystal Walen ("Ms. Walen") and is the owner, by written assignment from Ms. Walen, of the registered copyright in an original two-dimensional artwork entitled "Brush Stroke Leaves" (the "Artwork"), a distinctive hand-painted botanical pattern that Ms. Walen created and first published in July 2016 and that has since been licensed commercially for wallpaper, fabric, and related home products.

2. Without Ms. Walen's authorization, Leapfrog reproduced the Artwork, or a design copied from and substantially similar to the Artwork, on a line of "Ello"-branded consumer products—including reusable lunch totes, lunch storage "stacks," and reusable sandwich bags—which Leapfrog manufactured, advertised, distributed, and sold throughout the United States, both directly through its own website and through national retail channels, including Target's retail stores and Rebelstork's online resale platform.

3. When confronted with its infringement, Leapfrog did not deny copying the design embodied in the Artwork. Instead, Leapfrog asserted that it had purchased a stock-image license from Adobe Stock for a design titled "Green Leaf," uploaded to the Adobe Stock platform by a third-party contributor operating under the alias "PackagingMonster." But Ms. Walen has never licensed, uploaded, or authorized the Artwork to or through Adobe Stock or any other stock-image marketplace, and has never authorized any of her limited, product-specific licensees to do so. The "Green Leaf" design that Leapfrog licensed is an unauthorized copy of, and/or derivative work based upon, Ms. Walen's Artwork, which had been displayed on her website for years before the "Green Leaf" asset appeared on Adobe Stock. A license procured from an entity that does not own or control

the copyright in a work conveys no rights as against the true copyright owner. Leapfrog's purported license is accordingly no defense to this action, and the copies Defendants manufactured, distributed, and sold were not lawfully made under the Copyright Act.

4. By this action, Plaintiff seeks injunctive relief, impoundment and destruction of the infringing products, its actual damages and Defendants' profits attributable to the infringement (or, in the alternative and to the extent available, statutory damages), and such other relief as the Court deems just and proper.

**THE PARTIES**

5. Plaintiff Crystal W Design LLC is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 5482 Zuni Street, Denver, Colorado 80221. CWD was originally organized under the laws of the State of California in 2018 and was converted to a Colorado limited liability company in 2019. CWD is owned and operated by Crystal Walen, an individual residing in Denver, Colorado, and operates Ms. Walen's design and licensing business. Ms. Walen is a professional artist, illustrator, and textile and surface designer who creates original artwork, which is licensed through CWD to manufacturing and retail partners for use on wallpaper, fabric, and other home and consumer products, including through the website located at www.crystalwdesign.com.

6. On information and belief, Defendant Leapfrog Product Development, LLC is a limited liability company organized and existing under the laws of the State of Illinois, with its principal place of business at 1400 N. Kingsbury Street, Suite 100, Chicago, Illinois 60642. On information and belief, Leapfrog designs, manufactures, markets, and sells housewares and food-storage products under the brand name "Ello," including through its website located at www.elloproducts.com, and distributes such products through national retailers, including within this District.

7. On information and belief, Defendant Target Corporation is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Target owns and

operates retail stores throughout the United States, including numerous stores within this District, and sells merchandise through those stores and through its website, www.target.com.

8. Defendant Rebelstork U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware. On April 24, 2025, Rebelstork filed an Application for Certificate of Authority with the North Carolina Secretary of State in which it stated that it does not have a principal office. On information and belief, Rebelstork operates an online "re-commerce" marketplace at www.fromrebel.com through which it advertises, offers for sale, sells, and ships returned, open-box, and overstock consumer products to customers throughout the United States, including to customers within this District. On information and belief, Rebelstork also maintains a facility at 2820 Stadium Drive, Kannapolis, North Carolina 28083.

9. Plaintiff is unaware of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues such defendants by fictitious names. On information and belief, the Doe defendants include, without limitation, the person or entity operating under the Adobe Stock contributor alias "PackagingMonster," which copied the Artwork and uploaded it, or a derivative of it, to the Adobe Stock platform for licensing, as well as other persons or entities that manufactured, supplied, imported, distributed, advertised, offered for sale, or sold products bearing the Artwork or designs copied therefrom. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

10. On information and belief, at all relevant times, each Defendant was the agent, affiliate, partner, supplier, or co-venturer of each other Defendant with respect to the acts alleged herein, acted in concert with and with the knowledge of the other Defendants, and/or ratified, authorized, directed, or materially benefited from the conduct alleged herein.

## **JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. § 101 et seq.

12. This Court has personal jurisdiction over each Defendant because, on information and belief, each Defendant transacts substantial business within the State of California and this District; has purposefully directed its activities at California, including by advertising, offering for sale, selling, and shipping the infringing products described herein to consumers in California and in this District through retail stores and/or interactive commercial websites; and has committed acts of copyright infringement within California and this District, causing injury to Plaintiff that each Defendant knew or reasonably should have known would be suffered in this forum.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because each Defendant or its agent resides or may be found in this District, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

### A. Ms. Walen and the Copyrighted Artwork

14. Ms. Walen is a working artist whose livelihood depends upon the creation and commercial licensing of her original designs. Ms. Walen has spent years developing her distinctive hand-painted aesthetic and a portfolio of original surface designs, and she has expended considerable resources developing, marketing, and protecting her copyrights. Since 2018, Ms. Walen has conducted her design and licensing business through Plaintiff CWD.

15. In 2016, Ms. Walen created the Artwork, an original two-dimensional textile design consisting of a distinctive arrangement of hand-painted brushstroke leaf motifs rendered in dark pigment against a cream background. The Artwork reflects numerous original, creative choices by Ms. Walen, including, without limitation, the shape, taper, texture, and dry-brush character of each individual leaf stroke; the grouping of strokes into leaf clusters; the directional orientation, spacing, density, and rhythm of the clusters across

the composition; and the overall visual balance of the repeating pattern.

16. Ms. Walen first published the Artwork on July 18, 2016, under the title "Not So Black and White Leaves," including by posting the Artwork to her public Instagram account, where it was publicly displayed bearing Ms. Walen's name and was engaged with by industry participants, including the print-on-demand fabric marketplace Spoonflower. Ms. Walen retitled the work "Brush Stroke Leaves" in 2018. Since its publication, the Artwork has been continuously and publicly available online, including on Ms. Walen's website at www.crystalwdesign.com, where it is offered for license in connection with wallpaper, fabric, and related products.

17. Ms. Walen is the sole author of the Artwork. The United States Copyright Office has issued a Certificate of Registration for the Artwork, Registration No. VA 2-466-946, with an effective date of registration of June 19, 2025, identifying Ms. Walen as the author and copyright claimant. By a written assignment effective September 1, 2026, pursuant to 17 U.S.C. § 204(a), Ms. Walen irrevocably assigned and transferred to CWD all right, title, and interest in and to the Artwork and the copyright therein, together with all claims and causes of action for past, present, and future infringement of the Artwork, including the right to sue for and to recover damages, profits, and all other remedies for infringement occurring prior to the effective date of the assignment. CWD is accordingly the sole owner of the copyright in the Artwork and of all accrued claims for infringement asserted herein. A true and correct copy of the Artwork is attached hereto as Exhibit 1, and a true and correct depiction of the Certificate of Registration is attached hereto as Exhibit 2.

18. The Artwork is licensed to authorized partners pursuant to negotiated terms and quality controls. Ms. Walen has licensed the Artwork to only four companies: Spoonflower, Inc. (through which Ms. Walen has sold her designs on fabric, wallpaper, home décor, and, previously, giftwrap for more than ten years, and where the Artwork remains actively listed); Society6 (a license since discontinued); Casetify (a license since discontinued); and Limitless Walls (limitlesswalls.com). Each such license was non-

exclusive and limited to the reproduction of the Artwork on specified physical products—fashion accessories and home décor products—and none authorized the licensee to distribute the Artwork as a digital asset, file, or download in any form. None of those licenses granted any right to sublicense the Artwork. In addition, Ms. Walen has opted into an affiliate marketing program through which Spoonflower sells physical fabric, wallpaper, and home décor products bearing her designs on Etsy; Ms. Walen has no agreement to sell or license her artwork through Etsy itself.

19. Ms. Walen has never licensed, uploaded, or otherwise authorized the Artwork—or any variant of it—to or through Adobe Stock or any other stock-image or digital-asset marketplace, whether herself or through anyone acting on her behalf. Ms. Walen has never made the Artwork available for download through any website, platform, or portfolio site, and has never shared high-resolution files of the Artwork with any person or entity outside the formal, product-specific licensing arrangements identified above. Ms. Walen has never licensed or otherwise authorized any Defendant, Adobe Inc., Adobe Stock, any Adobe Stock contributor (including any contributor operating as "PackagingMonster"), or any person named "Micaela McCabe" to reproduce, distribute, publicly display, or create derivative works based upon the Artwork.

20. Accordingly, there exists no authorized chain of title or permission—through any licensee, collaborator, or other person—by which the Artwork could lawfully have been uploaded to, or licensed through, Adobe Stock. Any reproduction of the Artwork, or of any work substantially similar to or derived from the Artwork, appearing on the Adobe Stock platform is necessarily unauthorized.

**B. The Infringing "Green Leaf" Design and Leapfrog's Ello Products**

21. On information and belief, after Ms. Walen published the Artwork, a third party operating under the contributor alias "PackagingMonster" copied the Artwork and uploaded an unauthorized reproduction and/or derivative of the Artwork to the Adobe Stock platform under the title "Green Leaf," Adobe Stock Asset No. 640735047 (the "Infringing Design"). The Infringing Design reproduces the protected expression of the

Artwork, including the distinctive shape, taper, and dry-brush texture of the leaf strokes, the clustering of the strokes, and the compositional arrangement, spacing, density, and overall visual impression of the Artwork, differing principally in colorway.

22. On information and belief, neither "PackagingMonster" nor Adobe owns or controls any copyright interest in the Artwork, and neither had any authority to license the Artwork or any work copied or derived from it. Any purported license to the Infringing Design accordingly conveyed no rights whatsoever as against Ms. Walen.

23. Leapfrog's own Adobe Stock license-history records, as produced by its counsel, reflect that the Extended License for the Infringing Design was "licensed by" one "Micaela McCabe," on information and belief an employee, agent, or representative of Leapfrog who procured the license on Leapfrog's behalf. Ms. Walen does not know, has never had any dealings with, and has never authorized or granted any rights in the Artwork to any person named Micaela McCabe or to any contributor operating as "PackagingMonster."

24. On information and belief, beginning no later than February 7, 2024, when by its own admission it first purchased an Adobe Stock standard license for the Infringing Design, Leapfrog reproduced the Infringing Design—and thereby the protected expression of the Artwork—on a line of Ello-branded products, including without limitation the "Ello Reusable Lunch Tote," the "Ello Lunch Stack," reusable sandwich and storage bags, and related products and packaging (collectively, the "Infringing Products"), in a green-on-cream colorway substantially similar to the Artwork.

25. On information and belief, Leapfrog manufactured or caused to be manufactured the Infringing Products, imported and distributed the Infringing Products throughout the United States, advertised and publicly displayed the Infringing Products and images thereof (including on www.elloproducts.com, where Leapfrog offered, among other things, a "Lunch Tote & Oasis Tumbler Bundle" bearing the design), and sold the Infringing Products directly to consumers and to retail partners, including Target.

26. On information and belief, on or about June 18, 2025, Leapfrog purchased

an Adobe Stock "Extended" license for the Infringing Design—an upgrade reflecting Leapfrog's expanded commercial exploitation of the design on merchandise manufactured for sale—and Leapfrog has continued to manufacture, distribute, advertise, offer for sale, and sell the Infringing Products thereafter.

### C. Target's and Rebelstork's Sale of the Infringing Products

27. On information and belief, Target purchased the Infringing Products from Leapfrog and advertised, publicly displayed, offered for sale, sold, and distributed the Infringing Products in Target retail stores throughout the United States and online. By way of example, on June 16, 2025, three Infringing Products— an Ello-branded reusable sandwich bag set, an Ello "Lunch Stack," and an Ello "Reusable Lunch Tote,"—were purchased at a Target retail store in North Dartmouth, Massachusetts for a total price of $49.91 as reflected on a sales receipt identifying three Ello items bearing item numbers 070006958, 070009549, and 070007680. True and correct copies of photographs of the three Infringing Products so purchased and the corresponding purchase receipt are attached hereto as Exhibit 4.

28. On information and belief, Rebelstork advertised, publicly displayed, offered for sale, sold, and distributed the Infringing Products through its website, www.fromrebel.com, including an "Ello Lunch Bag Food Storage Container Green Leaf" listing offered in "Open Box" and "Imperfect" conditions at a price of $9.99, which listing prominently reproduced and publicly displayed images of the Infringing Products and the design copied from the Artwork. A true and correct copy of Rebelstork's product listing for the "Ello Lunch Bag Food Storage Container Green Leaf" is attached hereto as Exhibit 5.

29. On information and belief, the Infringing Products have also propagated into secondary resale markets bearing the design copied from the Artwork, including, without limitation, listings by the eBay seller "Cardinal Bargains" on www.ebay.com; listings by the Poshmark users "beautypower20" and "Glow_87" on www.poshmark.com; and a listing posted by Facebook user Danielle Hurley in the "Horry County Classifieds"

Facebook group, offering an "Ello Green Leaf Reusable Lunch Tote" for sale. This proliferation of unauthorized copies across multiple marketplaces further erodes the value and exclusivity of the Artwork and compounds the harm to Plaintiff's licensing markets.

30. Because the Infringing Products reproduce the Artwork without Ms. Walen's authorization, no copy of the Infringing Products was "lawfully made under" the Copyright Act within the meaning of 17 U.S.C. § 109(a). Accordingly, no Defendant's distribution or sale of the Infringing Products is protected by the first sale doctrine, and no downstream sale exhausted any exclusive rights in the Artwork.

**D. Access and Substantial Similarity**

31. On information and belief, Defendants and/or those acting in concert with them, including Doe defendant "PackagingMonster," had access to the Artwork, which has been widely disseminated and publicly available on the Internet continuously since July 2016, including on Instagram, Facebook, Tumblr, and Pinterest, where Ms. Walen has marketed the Artwork; on Spoonflower and other authorized marketplaces through which products bearing the Artwork have been sold for years; and on Ms. Walen's own commercial website.

32. The design appearing on the Infringing Products is strikingly and substantially similar to the Artwork in protected expression. The shared expression includes, among other elements: (a) the rendering of each leaf as a single elongated dry-brush stroke with a broken edge and pointed taper, rather than a smooth or outlined form; (b) the slender, high-aspect-ratio proportions of the strokes; (c) the gathering of strokes into loose, multi-stroke clusters rather than even spacing or stem-based arrangement; (d) the multi-directional, all-over scatter of the clusters, with no grid, row, or repeat axis; (e) the rhythm and density of the composition, balancing dense clusters against open negative space; and (f) the application of a single contrasting pigment over an off-white cream ground. These similarities extend far beyond any unprotectable idea of "botanical leaves" and encompass the particular original selection, coordination, and arrangement of expressive elements in the Artwork. A side-by-side comparison of the Artwork and the

Infringing Products, identifying these shared elements, is attached hereto as Exhibit 3. Side-by-side comparison compels the conclusion that the Infringing Design was copied from the Artwork.

**E. Defendants' Conduct After Notice**

33. By letters dated March 20, 2026, Ms. Walen, through counsel, notified each of Leapfrog, Target, and Rebelstork in writing of her copyright in the Artwork, identified the Infringing Products, demanded that each immediately cease and desist from further manufacture, distribution, display, offer for sale, and sale of the Infringing Products, and demanded a written accounting (the "Demand Letters").

34. Also on March 20, 2026, Ms. Walen, through counsel, served takedown notices pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512, on eBay, Inc., Poshmark, Inc., and Meta Platforms, Inc., identifying the infringing secondary-market listings described above. eBay and Poshmark each confirmed removal of the identified infringing listings. Meta, by contrast, has never responded to the notice or confirmed removal of the identified listing, notwithstanding proof of delivery to its designated DMCA agent and corporate addresses. These takedown efforts, while necessary, are a costly and incomplete remedy: so long as Defendants continue to manufacture, distribute, and sell the Infringing Products, unauthorized copies of the Artwork will continue to enter and re-enter the marketplace.

35. By letter dated April 9, 2026, counsel for Leapfrog responded to the Demand Letters, admitting that the design appearing on the Ello-branded products pictured in the Demand Letters is the Adobe Stock "Green Leaf" design, and asserting that Leapfrog's purchases of Adobe Stock licenses for that design immunize its conduct. Leapfrog's position is unavailing: on information and belief, Adobe Stock "Green Leaf" design is itself an unauthorized copy of the Artwork, and neither Adobe nor its contributor had any right to license Ms. Walen's protected expression to Leapfrog or anyone else.

36. By email dated April 9, 2026, counsel for Rebelstork responded to the Demand Letters, asserting that Rebelstork merely resells "genuine" returned goods and

invoking the first sale doctrine. Rebelstork's position is likewise unavailing: the first sale doctrine applies only to copies lawfully made under the Copyright Act, and the Infringing Products are not such copies.

37. On information and belief, notwithstanding the Demand Letters, Defendants have continued to reproduce, distribute, publicly display, advertise, offer for sale, and/or sell the Infringing Products. Any infringement occurring after Defendants' receipt of the Demand Letters—and, as to Leapfrog, after its receipt of actual knowledge of Ms. Walen's rights—is willful, intentional, and in reckless disregard of the rights of Ms. Walen and Plaintiff.

38. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiff, including the destruction of the value and exclusivity of the Artwork, interference with Plaintiff's existing and prospective licensing relationships, and consumer confusion as to whether Ms. Walen or Plaintiff authorized, approved, or profited from the Infringing Products.

## FIRST CLAIM FOR RELIEF

**Copyright Infringement — 17 U.S.C. §§ 106 and 501**

**(Against All Defendants)**

39. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

40. The Artwork is an original work of authorship fixed in a tangible medium of expression and constitutes copyrightable subject matter under 17 U.S.C. § 102. Plaintiff owns the copyright in the Artwork by written assignment from Ms. Walen, together with all accrued claims for infringement thereof, and a valid Certificate of Registration has issued therefor, Registration No. VA 2-466-946.

41. Pursuant to 17 U.S.C. § 106, Plaintiff owns the exclusive rights, among others, to reproduce the Artwork, to prepare derivative works based upon the Artwork, to distribute copies of the Artwork to the public, and to publicly display the Artwork.

42. Without authorization from Ms. Walen or Plaintiff, each Defendant has

directly infringed the exclusive rights in the Artwork, including by: (a) as to Leapfrog, reproducing the Artwork and preparing derivative works based upon the Artwork by applying the Infringing Design to the Infringing Products and their packaging and marketing materials, and distributing, publicly displaying, advertising, offering for sale, and selling the Infringing Products; (b) as to Target, distributing, publicly displaying, advertising, offering for sale, and selling the Infringing Products in its retail stores and online; and (c) as to Rebelstork, reproducing and publicly displaying images of the Infringing Products in its online listings and distributing, advertising, offering for sale, and selling the Infringing Products through www.fromrebel.com.

43. Each unauthorized reproduction, distribution, public display, offer for sale, and sale of the Infringing Products constitutes a separate and distinct act of infringement of the copyright in the Artwork in violation of 17 U.S.C. § 501.

44. Defendants' infringement has been and continues to be willful, intentional, and purposeful, and/or undertaken in reckless disregard of and with indifference to the rights of Ms. Walen and Plaintiff, including, without limitation, all infringement occurring after Defendants' receipt of the Demand Letters.

45. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and will continue to suffer actual damages, including lost licensing revenue and diminution in the value of the Artwork, in an amount to be proven at trial, and Defendants have obtained profits attributable to the infringement that are recoverable by Plaintiff pursuant to 17 U.S.C. § 504(b). In the alternative, and to the extent available, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages of up to $150,000 per infringed work for willful infringement, together with attorneys' fees and costs pursuant to 17 U.S.C. § 505.

46. Defendants' infringement has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm to Plaintiff for which it has no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 and to impoundment and destruction of all infringing articles pursuant

to 17 U.S.C. § 503.

## **SECOND CLAIM FOR RELIEF**

### **Contributory Copyright Infringement**

### **(Against Leapfrog and Does 1 through 10)**

47. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

48. Target, Rebelstork, and other retailers, distributors, and resellers have directly infringed the copyright in the Artwork by distributing, publicly displaying, advertising, offering for sale, and selling the Infringing Products, as alleged above.

49. Leapfrog knew or had reason to know of such direct infringement. On information and belief, Leapfrog selected and applied the Infringing Design to the Infringing Products, manufactured and supplied the Infringing Products to Target and other retail channels for the very purpose of their further distribution and sale, and provided the marketing materials and product imagery used to advertise and display them. Since no later than its receipt of the Demand Letters on or about March 20, 2026, Leapfrog has had actual knowledge of Ms. Walen's rights and of the infringing character of the Infringing Products.

50. By supplying the Infringing Products and associated materials to downstream sellers, and by failing to recall the Infringing Products or direct the cessation of their sale after notice, Leapfrog has induced, caused, and/or materially contributed to the direct infringement of the copyright in the Artwork by others, and is liable as a contributory infringer.

51. On information and belief, Doe defendant "PackagingMonster" likewise induced, caused, and/or materially contributed to the direct infringement alleged herein by copying the Artwork and uploading the Infringing Design to Adobe Stock for commercial licensing, with knowledge or reason to know that licensees would reproduce the design on merchandise for public sale.

52. As a direct and proximate result of such contributory infringement, Plaintiff

has suffered and will continue to suffer damages, and the contributory infringers have obtained profits, in amounts to be proven at trial, and Plaintiff is entitled to the remedies set forth in 17 U.S.C. §§ 502 through 505, as applicable.

/ / /

/ / /

/ / /

**<u>THIRD CLAIM FOR RELIEF</u>**

**Vicarious Copyright Infringement**

**(Against Leapfrog and Does 1 through 10)**

53. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

54. On information and belief, Leapfrog possesses the right and practical ability to supervise and control the infringing conduct alleged herein, including through its contractual and commercial relationships with its retail partners and its ability to recall the Infringing Products, discontinue the Infringing Design, and direct the removal of infringing listings and displays.

55. Leapfrog receives a direct financial benefit from the infringing conduct alleged herein, including revenue from its sales of the Infringing Products to retailers and consumers and the commercial value of the Infringing Design in driving sales of its Ello-branded product line.

56. By declining to exercise its right and ability to stop or limit the infringement while continuing to profit from it, Leapfrog is vicariously liable for the direct infringement of the copyright in the Artwork alleged herein.

57. As a direct and proximate result of such vicarious infringement, Plaintiff has suffered and will continue to suffer damages, and Leapfrog has obtained profits, in amounts to be proven at trial, and Plaintiff is entitled to the remedies set forth in 17 U.S.C. §§ 502 through 505, as applicable.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Crystal W Design LLC respectfully prays for judgment against Defendants, and each of them, as follows:

1. For a preliminary and permanent injunction pursuant to 17 U.S.C. § 502 enjoining Defendants, and each of them, together with their officers, directors, agents, servants, employees, representatives, licensees, successors, assigns, and all persons acting in concert or participation with any of them, from reproducing, preparing derivative works based upon, distributing, publicly displaying, advertising, offering for sale, or selling the Artwork, the Infringing Design, the Infringing Products, or any work substantially similar to the Artwork, or any portion thereof;

2. For an order pursuant to 17 U.S.C. § 503 impounding and ordering the destruction or other reasonable disposition of all Infringing Products and all plates, molds, matrices, masters, screens, films, artwork files, and other articles by means of which the Infringing Products were or may be reproduced, in Defendants' possession, custody, or control;

3. For an order requiring Defendants to recall the Infringing Products from all channels of distribution and to provide a full written accounting of all manufacture, importation, distribution, and sales of the Infringing Products, including units, pricing, gross receipts, and the identities of all suppliers, manufacturers, distributors, and retail customers;

4. For an award of Plaintiff's actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial; or, in the alternative and to the extent available, for an award of statutory damages pursuant to 17 U.S.C. § 504(c), including maximum enhanced statutory damages for willful infringement;

5. For an award of Plaintiff's full costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505, to the extent available, and as otherwise permitted by law;

6. For prejudgment and postjudgment interest at the maximum rate

permitted by law; and

7. For such other and further relief as the Court deems just and proper.

DATED: October 6, 2026

NOVIAN & NOVIAN, LLP

By: _/s/ *Farhad Novian*___

Farhad Novian
Lauren Woodland
Alexander Kandel
Attorneys for Plaintiff Crystal W Design LLC

**DEMAND FOR JURY TRIAL**

Plaintiff Crystal W Design LLC hereby demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: October 6, 2026

NOVIAN & NOVIAN, LLP

By: *__/s/ Farhad Novian__*

Farhad Novian
Lauren Woodland
Alexander Kandel
Attorneys for Plaintiff Crystal W Design LLC